IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                                                OPINION AND ORDER

        Plaintiff,

                                                07-cr-74-bbc-01
                                                10-cv-371-bbc

   v.

BRYAN SEVERSON,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant Bryan Stevenson has filed a timely motion under 28 U.S.C. § 2255, seeking to vacate or correct his sentence. He does not contend that his sentence was imposed illegally or in violation of the Constitution, but that his counsel was ineffective in not arguing effectively for (1) a two-point reduction in defendant's sentence for the minor role he played; (2) consideration of mitigating factors; and (3) a reduced loss amount. In addition, defendant asks the court to give him 1 to 3 points for acceptance of responsibility despite his exercise of his right to a trial on certain factual matters. I conclude that defendant has not shown that his counsel was constitutionally ineffective. As to defendant's request for application of points for acceptance of responsibility, I have no authority to

1

change defendant's sentence once it is imposed unless I find constitutional errors in it. (There are two other situations in which a court can change a sentence after it is imposed; one is if the government moves for a reduction and the other is if the court of appeals remands the case for resentencing, but neither situation is present in this case.)  Therefore, the motion for post conviction relief will be denied.

BACKGROUND

Defendant Bryan Severson was found guilty by a jury of 28 counts relating to the defrauding of the First National Bank of Blanchardville, Wisconsin.  Defendant was a participant in a mystifying scheme by the president of the bank, Mark Hardyman, to increase the bank's lending activities.  (Why he wanted to do this has never been explained. I am aware of no evidence that he derived any personal financial benefit from his actions. If, as has been suggested, he wanted to look like a major player in the banking world and a backer of entrepreneurial businesses, he could not have chosen less promising enterprises in which to invest.)  To that end, Hardyman bankrolled defendant's business ventures with a plethora of loans from the bank, despite defendant's insolvency and obvious lack of business acumen.

To cover up the facts that defendant was not repaying his loans and that the bank was not underwriting successful ventures, Hardyman and defendant conspired to deceive the

2

bank's board by having defendant issue and deposit checks that lacked sufficient funding. Generally, defendant issued the checks before some sort of review or audit was to take place at the bank. At times, defendant and Hardyman arranged to have one of defendant's employees write checks to defendant in various amounts and without funding. Hardyman was definitely the leader and organizer in the scheme. He told defendant what checks to write and when to write them and encouraged defendant to invest in his businesses, which included a small towing company and a rundown racetrack. When the scheme unraveled and the bank failed and had to be sold by bank examiners, defendant was found to have been the recipient of about $8.7 million dollars of loans.

At sentencing, I found that defendant's base offense level was seven, increased by 20 levels because the intended loss was more than $7,000,000 ($7,136,461.00). A two-level increase applied because defendant had provided false material statements under oath in a bankruptcy proceeding and a four-level increase applied because defendant's fraudulent activities substantially jeopardized the safety and soundness of the bank. I denied defendant a three-level reduction for acceptance of responsibility because he took his case to trial, denying the factual elements of the crime. Defendant's adjusted offense level was 33 and his criminal history category was III, making his guideline imprisonment range 168-210 months. He was sentenced to a total of 140 months for all of his offenses. I found that his restitution obligation was $6,429,670.00.

3

Defendant appealed, contending that the government failed to prove his knowledge of illegality on ten of the counts of conviction and that the court erred in giving the jury an instruction on deliberate avoidance of knowledge. He contended that his sentence was illegal because the court did not calculate the loss properly and should not have included two prior misdemeanors in determining his criminal history. The court of appeals affirmed both the conviction and sentence. United States v. Severson, 569 F.3d 683 (7th Cir. 2009).

DISCUSSION

Defendant does not assert that the court erred in denying him a two point reduction for minor role in the offense or in imposing a longer sentence on him than on Hardyman. (He would be barred from doing so by his failure to raise those issues on direct appeal. Prewitt v. United States, 83 F.3d 932, 935 (7th Cir. 1996) ("An issue not raised on direct appeal is barred from collateral review absent a showing of both good cause for the failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.") (citing Reed v. Farley, 512 U.S. 339, 354 (1994)); see also Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002)).

Instead of arguing the alleged underlying error, defendant argues that his counsel was ineffective in not arguing for the reduction and for not presenting mitigating factors. He

4

also argues that counsel did not effectively contest the loss amount.

(For the purpose of deciding defendant's motion, I will assume that there might be situations in which ineffectiveness in arguing a particular reduction in a sentencing guidelines offense level could amount to a constitutional deprivation, although it seems highly unlikely that it could.)

As to the first contention, involving the minor role, defendant's counsel was well aware of the evidence presented against defendant at trial. The government had shown convincingly that defendant was deeply involved in Hardyman's efforts to deceive the bank. Indeed, it would be difficult to argue that a businessman who secured more than $7 million in loans from a bank on which he paid almost nothing was a minor participant in the scheme. The jury was not persuaded that he was unaware of the illegality of his acts, as demonstrated by its verdict. It found that defendant had the intent to defraud and that he had knowingly engaged in the scheme by assisting Hardyman.

Defendant says that he had no idea what Hardyman was doing to conceal the bad loans, but such knowledge was not necessary in light of the evidence at trial that showed he was well aware that Hardyman was not following banking practices. Defendant signed mortgages and promissory notes in blank; he received loans when he knew he had no assets and less income than debts; and he knew that his bank accounts were overdrawn. Yet at the same time, he wrote endless numbers of checks that were not backed up with funding, asked

5

other people to do the same on his behalf.  He was not a minor participant, but an active one, enabling Hardyman to carry out his bank fraud.  No effective lawyer would have wasted the court's or his own time arguing for a minor role reduction in light of the trial evidence.

As for defendant's second contention that his counsel did not effectively argue mitigating factors, the record contains no evidence to support this claim.  A review of the transcript shows that counsel argued vigorously for a sentence that did not exceed Hardyman's, given the role that Hardyman had played in luring defendant into his scheme.  Ultimately, however, the facts of the case defeated counsel's best interests.  Defendant had a higher criminal history score; he had committed the crimes while under supervision for an earlier offense; and he took his case to trial, whereas Hardyman had been cooperative promptly after the bank failed.

Defendant's third contention must have been suggested to him by someone unfamiliar with the proceedings.  No one present at the two sentencing hearings held on "intended loss" and restitution would characterize defense counsel's efforts to reduce defendant's loss amount and restitution obligation as ineffective.  To the contrary, they were tenacious and compelling.  I cannot think of anything that counsel could have done to make a better case for a reduction; indeed, he succeeded in obtaining a reduction in the restitution obligation from the amount of the intended loss.  In light of the evidence that it was only when Hardyman asked for documentation of collateral for the racetrack loan that defendant

6

signed a mortgage, I could not find that defendant had not intended the total loss assessed against him. After all, he accepted the loan for the purchase of the racetrack at a time when he had no money or assets to repay it, making the lack of collateral all the more telling.

In short, I find no reason to conclude that defendant was denied constitutionally effective counsel as required under Strickland v. Washington, 466 U.S. 668 (1984). His counsel was able, well prepared and well versed in the facts and the law applicable to his client's case.

ORDER

IT IS ORDERED that defendant Bryan Severson's motion for vacation or modification of his sentence, brought under 28 U.S.C. § 2255 is DENIED. I decline to issue a certificate of appealability because reasonable jurists would not debate the correctness of the ruling in this case. Slack v. McDaniel, 529 U.S. 473, 484 (2000). If he wishes, petitioner may ask a circuit judge to issue the certificate under Fed. R. App. P. 22(b).

Entered this 28th day of July, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge